DOCKETED

MAY 0 3 2002

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

MAY 0 2 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| GEORGIA G. SARANTAKIS and CAROL ANN COYLE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: 02 C 1609 |
| FRANK DOMINIC GRUTTADAURIA, LEHMAN BROTHERS, INC., LEHMAN BROTHERS HOLDINGS, INC., S.G. COWEN SECURITIES, SOCIETE GENERALE SA, COWEN & COMPANY, HAMBRECHT & QUIST, INC. and J.P. MORGAN CHASE & CO., | ) ) ) ) ) ) ) ) ) | Judge Paul E. Plunkett |
| Defendants. | ) ) | Magistrate Judge Nolan |

## NOTICE OF FILING

TO:     SEE ATTACHED SERVICE LIST

**YOU ARE HEREBY NOTIFIED** that on May 2, 2002 there was filed with the United States District Court, Northern District of Illinois, Eastern Division, **PLAINTIFFS' FIRST AMENDED COMPLAINT**, a copy of which is are attached hereto.

WILLIAMS MONTGOMERY & JOHN LTD.

Joseph L. Kish

C. Barry Montgomery
Joseph L. Kish
**WILLIAMS MONTGOMERY & JOHN LTD.**
Attorneys for Plaintiff – ID No.: 412
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 443-3200 - Doc ID - 575326

## **PROOF OF SERVICE**

I certify that I served a copy of this Notice and the attached First Amended Complaint to each person to whom it is directed to on the attached Service List by hand delivery and via process server on May 2, 2000.

Joseph L. Krish

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA G. SARANTAKIS and CAROL ANN COYLE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: 02 C 1609 |
| FRANK DOMINIC GRUTTADAURIA, LEHMAN BROTHERS, INC., LEHMAN BROTHERS HOLDINGS, INC., S.G. COWEN SECURITIES, SOCIETE GENERALE SA, COWEN & COMPANY, HAMBRECHT & QUIST, INC. and J.P. MORGAN CHASE & CO., | ) ) ) ) ) ) ) ) ) ) ) | Judge Paul E. Plunkett  Magistrate Judge Nolan |
| Defendants. | ) | |

## SERVICE LIST

Kenneth F. Berg
**ULMER & BERNE LLP**                                    **VIA HAND DELIVERY**
125 S. Wacker Drive, Suite 2000
Chicago, IL 60606
Tel: (312) 849-9370
Fax: (312) 849-9226

**Attorneys For Defendants**
 **J.P. Morgan Chase & Co. and**
**Hambrecht & Quist, Inc., N/K/A**
**J.P. Morgan Securities, Inc.**

Stephen J. Bisgeier                                      **VIA HAND DELIVERY**
Thomas M. Staunton
Miller, Shakman & Hamilton
208 S. LaSalle Street, Suite 1100
Chicago, IL 60604
Tel: (312) 263-3700
Fax: (312) 263-3270
**Attorneys For Defendants S.G. Cowen Securities Corp.**
**and Societe Generale**

Mr. Patrick G. King                             **VIA HAND DELIVERY**
Neal, Gerber & Eisenberg
Two N. LaSalle Street, Suite 2200
Chicago, IL  60602
Tel:   (312) 269-8000
Fax:   (312) 269-1747
**Attorneys For Defendants**
**Lehman Brothers, Inc. and**
**Lehman Brothers Holdings, Inc.**

DeGrandis & DeGrandis, Certified Public Accountants   **VIA PROCESS SERVER**
815 E. Superior Avenue, Suite 1625
Cleveland, Ohio  44114

Joseph DeGrandis, Jr.                          **VIA PROCESS SERVER**
815 E. Superior Avenue, Suite 1625
Cleveland, Ohio  44114

Cowen & Company                        **VIA HAND DELIVERY**
c/o Registered Agent
Bradley Patrick Summers
181 W. Madison, Suite 3400
Chicago, IL  60602

DOCKETED

MAY 0 3 2002

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

MAY 0 2 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

GEORGIA G. SARANTAKIS and )
CAROL ANN COYLE, )
                   )
                   )
                   )
            Plaintiffs, )
                   )
v. )       CASE NO.:   02 C 1609
                   )
FRANK DOMINIC GRUTTADAURIA, )   **FIRST AMENDED COMPLAINT**
LEHMAN BROTHERS, INC., )
LEHMAN BROTHERS HOLDINGS, INC., )   **DEMAND FOR TRIAL BY JURY**
S.G. COWEN SECURITIES, )
SOCIETE GENERALE SA, )
COWEN & COMPANY, )
HAMBRECHT & QUIST, INC., )
J.P. MORGAN SECURITIES, INC., )
DeGRANDIS & DeGRANDIS, Certified )
Public Accountants, and )
JOSEPH DeGRANDIS, JR., )
                   )
            Defendants. )

Plaintiffs, GEORGIA G. SARANTAKIS and CAROL ANN COYLE, for their First Amended Complaint against defendants FRANK DOMINIC GRUTTADAURIA, LEHMAN BROTHERS INC., LEHMAN BROTHERS HOLDING, INC., S. G. COWEN SECURITIES, SOCIETE GENERALE SA, COWEN & COMPANY, HAMBRECHT & QUIST, INC., J.P. MORGAN SECURITIES, INC., DeGRANDIS & DeGRANDIS, Certified Public Accountants, and JOSEPH DeGRANDIS, JR., allege as follows:

## NATURE OF THE ACTION

This is an action by individual investors to recoup monies misappropriated by the defendants through an elaborate scheme involving phony investment accounts, forgery, the illegal misdirection of the mail and repeated misrepresentations regarding the value of plaintiffs'

investment portfolio. Defendants' acts were done to conceal massive losses to plaintiffs' accounts due to Frank Gruttadauria's looting of plaintiffs' accounts for his personal gain.

## THE PARTIES

1.    Plaintiff, Georgia G. Sarantakis ("Sarantakis"), is an individual residing in Buffalo Grove, Illinois and is in her senior years.  Sarantakis brings this suit against all defendants.

2.    Plaintiff, Carol Ann Coyle ("Coyle"), is an individual residing in Barrington, Illinois and is the daughter of Georgia G. Sarantakis.  Coyle brings this suit against all defendants except Hambrecht & Quist, Inc. and J. P. Morgan Securities, Inc.

3.    Collectively, Sarantakis and Coyle will be referred to throughout this Complaint as "plaintiffs".

4.    Defendant, Frank Gruttadauria ("Gruttadauria"), is a resident of Cuyahoga County, Ohio although at all times relevant to this lawsuit he represented to plaintiffs that he lived in Lake Forest, Illinois.  Presently, Gruttadauria is incarcerated while awaiting trial for fraudulently obtaining a loan from National City Bank of Cleveland. He is under investigation by the Federal Bureau of Investigation, the Securities and Exchange Commission, the National Association of Securities Dealers and the New York Stock Exchange.

5.  .  Gruttadauria has been Sarantakis' stockbroker and investment advisor since 1987 and Coyle's stockbroker and investment advisor since 1991.  This relationship has continued through Gruttadauria's employment and affiliation with defendants, Hambrecht & Quist, Cowen & Company, S.G. Cowen Securities, and Lehman Brothers to the present in the case of Sarantakis, and Cowen & Company, S.G. Cowen Securities and Lehman Brothers to the present in the case of Coyle.  Since the late 1980's, but unbeknownst to plaintiffs, Gruttadauria has been

the Cleveland office manager for defendants Cowen & Company, S.G. Cowen Securities and Lehman Brothers.

6.    Defendant, Lehman Brothers Inc. ("Lehman"), is a registered broker-dealer engaged in the sale of securities. Lehman maintains an office in Chicago, Illinois. Lehman is a successor in interest to S.G. Cowen, having acquired the company in the fall of 2000. Gruttadauria was employed by Lehman from October 2000 through mid-January 2002.

7.    Defendant, Lehman Brothers Holdings, Inc. ("Lehman Holdings"), is the parent corporation of Lehman Brothers. Lehman Holdings is jointly and severally liable for the actions of its subsidiary Lehman Brothers.

8.    Defendant, S.G. Cowen Securities ("S.G. Cowen"), is the former brokerage arm of Defendant Societe Generale. At all relevant times, S.G. Cowen operated as a license broker-dealer in the sale of securities. S.G. Cowen maintains an office in Chicago, Illinois. Gruttadauria was employed by S.G. Cowen from July 1998 through October 2000.

9.    Defendant, Societe Generale SA ("Societe Generale"), is a French Corporation operating as a bank. Societe Generale acquired Cowen & Company and opened S.G. Cowen in 1998. In 2000, Societe Generale sold S.G. Cowen to Lehman Brothers. As the successor in interest to Cowen and the Parent Corporation of S.G. Cowen, Societe Generale is jointly and severally liable for the actions of its division and former predecessor in interest.

10.    Defendant, Cowen & Company ("Cowen"), is a registered broker-dealer engaged in the sale of securities. Cowen was a predecessor in interest to S.G. Cowen. Gruttadauria was employed by Cowen from May 1989 through July 1998. Gruttadauria represented to plaintiffs that Cowen's office where he worked was located in Chicago, Illinois.

11.     Defendant, Hambrecht & Quist, Inc. ("Hambrecht"), was a registered broker-dealer engaged in the sale of securities. On information and belief, Hambrecht is now doing business as J. P. Morgan Securities, Inc. Gruttadauria represented to plaintiffs that Hambrecht's office where he worked was located in Chicago, Illinois.

12.     Defendant, J.P. Morgan Securities, Inc. ("J.P. Morgan"), is a multi-service financial institution based in New York, New York. It is also a registered broker-dealer engaged in the sale of securities. As the successor in interest to Hambrecht, J.P. Morgan is jointly and severally liable for the actions of its division and former predecessor in interest.

13.     Collectively, Lehman, Lehman Holdings, S.G. Cowen, Societe Generale, Cowen, Hambrecht and J.P. Morgan will be referred to throughout this Complaint as the "broker-dealers" or "broker-dealer defendants".

14.     DeGrandis & DeGrandis Certified Public Accountants (DeGrandis & DeGrandis), is a business entity, form unknown, located in Cleveland, Ohio. DeGrandis & DeGrandis conducts business in Illinois, including the business conducted on behalf of plaintiffs described below.

15.     Joseph DeGrandis, Jr. (DeGrandis, Jr.) is a principle of DeGrandis & DeGrandis and, since 1991, performed accounting services for plaintiffs.

### JURISDICTION AND VENUE

16.     This Court has jurisdiction under 28 U.S.C §1331 because this action arises under laws of the United States, including the Securities and Exchange Act of 1934.

17.     Venue is proper in this District under 28 U.S.C. §1391 because the actions complained of occurred within this District.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

18.    Sarantakis, who is 80 years old, began investing with Gruttadauria in 1987 while Hambrecht employed Gruttadauria. She invested $226,000 at that time, which represented virtually all of the estate left to her by her husband when he died in 1979.

19.    Coyle began investing with Gruttadauria in 1991 while Cowen employed Gruttadauria. She invested over $15,000 at that time and an additional $34,500 with Gruttadauria in 1998. Coyle invested an additional $20,000 in 2001 while Gruttadauria was employed by Lehman.

20.    Plaintiffs sent their investment monies to Gruttadauria at Hambrecht's Chicago office and then Cowen's Chicago office. When Societe Generale acquired Cowen, and formed S.G. Cowen, plaintiffs continued to forward funds to Gruttadauria at S.G. Cowen's Chicago office. When Lehman, in turn, acquired S. G. Cowen, plaintiffs continued to forward funds to Gruttadauria at Lehman's Chicago office.

21.    Sarantakis believes she may have signed customer agreements with Hambrecht, but not J.P. Morgan, when Gruttadauria opened her account. The customer agreement contains an arbitration provision. However, the expressed terms of the customer agreements exclude the matters alleged in this complaint. Moreover, the arbitration provisions are inapplicable to Sarantakis' claims against Hambrecht because the matters asserted in this lawsuit were never contemplated by Sarantakis when she entered into the customer agreements with Hambrecht and thus there was no meeting of the minds between Sarantakis and Hambrecht that the matters alleged in this complaint would be arbitratable. Therefore this matter is not subject to arbitration as to Hambrecht and J.P. Morgan.

22.     Plaintiffs believe they may have signed customer agreements with Cowen, but not S.G. Cowen or Societe Generale when Gruttadauria opened their accounts.   The customer agreements contain arbitration provisions.   However, the express terms of the customer agreements exclude the matters alleged in this Complaint.  Moreover, these arbitration provisions are inapplicable to plaintiffs' claims here because the matters asserted in this lawsuit were never contemplated by plaintiffs when they entered into the customer agreements with Cowen and thus there was no meeting of the minds between plaintiffs and Cowen that the matters alleged in this complaint would be arbitrable.  Therefore, this matter is not subject to arbitration as to Cowen, S.G. Cowen or Societe Generale.

23.     Neither Gruttadauria nor anyone at Lehman or Lehman Holdings had plaintiffs sign any customer agreements when plaintiffs' accounts were opened at Lehman through Gruttadauria, and plaintiffs did not authorize anyone to sign them.  In particular, plaintiffs have never signed any Lehman document agreeing to arbitrate any claims that may arise as a result of their investing monies through Gruttadauria at Lehman or Lehman Holdings.   Therefore, this matter is not subject to arbitration as to Lehman or Lehman Holdings.

24.     Plaintiffs would regularly receive statements from Hambrecht, Cowen, S.G. Cowen and Lehman reflecting their steadily increasing account balances.  In October of 2000, plaintiffs, at the urging of Gruttadauria, combined their accounts into a single account held jointly by them and plaintiffs continued to invest funds with Gruttadauria at Lehman's Chicago office.

25.     The last statement plaintiffs received from Lehman reflected a joint account balance of more than $896,000.

26.     The account statements from Hambrecht, Cowen, S.G. Cowen and Lehman appeared legitimate, and plaintiffs had no reason to doubt their genuineness.   Moreover, Gruttadauria would relate information to plaintiffs regarding their accounts which was consistent with the information contained in their account statements from Hambrecht, Cowen, S.G. Cowen and Lehman.

27.     What plaintiffs did not know was that Gruttadauria had implemented and executed an elaborate scheme to defraud customers of Hambrecht, Cowen, S.G. Cowen and Lehman, including plaintiffs.  Instead of investing plaintiffs' money in their own account and for their own benefit, Gruttadauria misappropriated plaintiffs' funds to be used for other purposes.

28.     Gruttadauria's scheme was accomplished by numerous deceptive acts over the course of the entire time plaintiffs invested with him.  These acts include, but are not limited to:

a.     Representing that Gruttadauria was employed in the broker-dealers' Chicago, Illinois office where he had plaintiffs send their monies when they initially invested with the broker-dealer defendants, when Sarantakis would reinvest her investment proceeds with the broker-dealer defendants, and when Coyle invested additional sums as detailed in paragraph 19.

b.     Forging documents between plaintiffs and defendants;

c.     Misrepresenting to plaintiffs that the money invested with Gruttadauria would be used for investments in plaintiffs' names and for plaintiffs' benefit;

d.     Verbally misrepresenting to plaintiffs the status of the investments contained in plaintiffs' accounts;

e.     Mailing to plaintiffs bogus account statements on a periodic and usually monthly basis, which misrepresented the status of the investments contained in their

7

accounts. On information and belief, this act was accomplished by Gruttadauria misdirecting the real Hambrecht, Cowen, S.G. Cowen and Lehman account statements to post office boxes maintained by shell corporations formed by Gruttadauria, and preparing false statements which, although they appeared legitimate to plaintiffs, falsely reflected the status of plaintiffs' investments and inflated the account balances to mask Gruttadauria's misappropriation and depletion of plaintiffs' funds; and

f. Preparing false statements allegedly totaling year-end account performance, including false IRS Form 1099 and other forms submitted to plaintiffs as well as their accountants and tax preparers, with the intent that plaintiffs pay taxes based on false IRS Forms 1099.

29. . Plaintiffs justifiably relied on the misrepresentations and concealments of Gruttadauria in making their investment decisions, as well as their decision to keep their monies invested with Gruttadauria as he moved from Hambrecht, Cowen, S.G. Cowen and Lehman. Gruttadauria's actions are particularly egregious given that he knew that plaintiffs were relying solely on him for their investment advice even to the extent of paying taxes on non-existent gains from the defendants' phony account statements.

30. Hambrecht, Cowen, S.G. Cowen and Lehman facilitated Gruttadauria's fraudulent scheme and enabled it to exist for as long as he did because it was in Hambrecht, Cowen, S.G. Cowen and Lehman's financial interest not to do anything that would impede Gruttadauria from developing and maintaining business on behalf of Hambrecht, Cowen, S.G. Cowen and Lehman. Some, but not all, of the ways Hambrecht, Cowen, S.G. Cowen and Lehman facilitated Gruttadauria's fraudulent scheme include:

a.     Allowing Gruttadauria to supervise the activities of the broker-dealers' compliance officers, whose very duty it was to monitor the activities of stockbrokers such as Gruttadauria;

b.     Allowing Gruttadauria to maintain a computer separate and apart from the network systems developed by Hambrecht, Cowen, S.G. Cowen and Lehman;

c.     Failing to supervise and control the activities of Gruttadauria, specifically his misdirecting of numerous client account statements to the same post office boxes established in the names of Gruttadauria's shell corporations;

d.     Failing to ascertaining the legitimacy of documents purportedly signed by customers;

e.     Allowing Gruttadauria to make unauthorized account transfers that allowed Gruttadauria to make it appear that clients had sufficient assets to cover withdrawal requests and other desired transactions; and

f.     Failing to adhere to internal policies, procedures, rules, and regulations regarding the handling of customer's accounts.

31.    The acts and omissions of the broker-dealer defendants are particularly egregious because the broker-dealer defendants have been subject to discipline and fines previously for the very acts complained of in this Complaint.

32.    DeGrandis, Jr. and DeGrandis & DeGrandis also facilitated Gruttadauria's fraudulent scheme by committing numerous acts and omissions which include, but are not limited to:

a.     Preparing plaintiffs' tax returns based on customer account statements which DeGrandis, Jr. and DeGrandis & DeGrandis knew, or should have known, were

not legitimate account statements and did not accurately state the gains or losses plaintiffs incurred;

b.   Failing to ascertain the legitimacy of plaintiffs' account statements which DeGrandis, Jr. and DeGrandis & DeGrandis used to prepare plaintiffs' tax returns.

c.   Failing to inform plaintiffs that their account statements from the broker-dealers were not legitimate and, therefore, did not accurately state plaintiffs' true account balances.

d.   Failing to prepare accurate tax returns for plaintiffs based on the broker-dealer account statements properly addressed to DeGrandis, Jr. and DeGrandis & DeGrandis, resulting in plaintiffs' over paying income tax on phony investment gains which plaintiffs never actually realized.

33.   The last account statement plaintiffs received from Lehman in November, 2001 reflected a joint account balance of over $896,000.00. Lehman has recently informed plaintiffs that there was not a joint account for plaintiffs at Lehman, but only Sarantakis had an account at Lehman which, when Sarantakis closed the account in March of 2002, contained only $5,118.70. Plaintiffs are essentially penniless as a result.

34.   On information and belief, had plaintiffs' funds been prudently and responsibly invested in even a conservative investment portfolio, the monies invested by them would currently total over $1.25 million.

35.   As detailed below, Gruttadauria is personally liable for the fraudulent representations and misappropriations of plaintiffs' money. The broker-dealer defendants are jointly and severally liable for failure to supervise Gruttadauria's activities pursuant to §20(a) of the Securities and Exchange Act of 1934 and the common law doctrine of respondeat superior.

## COUNT I

### (Violation of Section 10(b) and Rule 10B-5 of the Securities
### and Exchange Act of 1934 against Gruttadauria and the Broker-Dealer Defendants)

36.     Plaintiffs reallege and incorporate by reference the statements and allegations of paragraphs 1 through 35.

37.     Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission prohibit the fraudulent sale or purchase of any security.

38.     Section 10(b) specifically states:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange. . .

> (b)     To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

39.     Securities trading is further regulated by Rule 10b-5 which states:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange.

> a.     To employ any device, scheme or artifice to defraud,

> b.     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> c.     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

40.     As a matter of well-established law, these provisions give rise to a private civil cause of action.

11

41. · As referenced in paragraph 28, Gruttadauria made false, material and misleading representations to plaintiffs, and further omitted material facts necessary to make his statements not misleading.

42. Gruttadauria acted with scienter, knowledge that his representations and concealments were false and were intended to deceive plaintiffs.

43. Plaintiffs relied upon defendant Gruttadauria's representations and suffered injury as a result.

44. Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

### COUNT II

### (Violation of Rule 20(a) of the Securities and Exchange Act of 1934 against Gruttadauria and the Broker-Dealer Defendants)

45. Plaintiffs reallege and incorporate by reference the statements and allegations of paragraphs 1 through 44.

46. · Rule 20(a) of the Securities and Exchange Act of 1934 [15 U.S.C.A. §78t] provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

47. Liability is imposed under this section where a party, such as the broker-dealer defendants, had control over the violator of the securities law and they failed to act in good faith.

Culpable participation is not required in the case of the broker-dealer defendants who had and have a stringent duty to supervise its employees such as Gruttadauria.

48.     The broker-dealer defendants are also responsible under the common law doctrine of respondent superior for all acts and omissions of Gruttadauria.

49.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT III

### (Violation of the Illinois Securities Law of 1953, 815 ILCS 5/1 et seq. against Gruttadauria and the Broker-Dealer Defendants)

50.     Plaintiffs incorporate by reference the statements and allegations of paragraphs 1 through 49.

51.     The Illinois Security Law of 1953, 815 ILCS 5/12 provides, in relevant part:

It shall be a violation of the provisions of this Act for any person:

. . .

F.     To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or intends to work a fraud or deceit on the purchaser or seller thereof.

G.     To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

. . .

I.     To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

J.      When acting as an investment advisor, investment advisor representative, or federal covenant investment advisor, by any means or instrumentality, directly or indirectly:

> (1)      To employ any device, scheme or artifice to defraud any client or prospective client;

> (2)      To engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; or

> (3)      To engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative. . . .

. . .

52.      As set forth in paragraph 28 and 30, defendants have engaged in transactions, practices or courses of business in connection with the sale or purchase of securities which have worked or has tended to work a fraud or deceit on plaintiffs.

53.      Additionally, defendants have obtained money or property through the sale of securities by means of untrue statements of material fact or by omission of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.      Moreover, acting as plaintiffs' investment advisor, defendants have employed a device, or scheme or artifice to defraud plaintiffs, by engaging in acts, transactions, practices, or courses of business which operate as a fraud or deceit on plaintiffs and/or which are fraudulent, deceptive or manipulative.

55.      Defendants' misconduct induced plaintiffs to purchase securities on the recommendation of Gruttadauria.

56.      The actions of defendants as described in paragraph 28 and 30 constitute fraud in violation of the provisions of the Illinois Securities Law of 1953, 815 ILCS 5/12. Defendant

made material fraudulent representations to plaintiffs and omitted material facts necessary to make their statements not misleading.

57.     As a matter of well-established common law, these provisions give rise to a private civil cause of action.

58.     Defendant Gruttadauria acted with scienter, knowledge that his representations and concealments were false and were intended to deceive plaintiffs.

59.     Plaintiffs relied on defendant Gruttadauria's representations and suffered damage as a result of their reliance.

60.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT IV

### (Violation of Fiduciary Duty under NASD and NYSE Rules against Gruttadauria and the Broker-Dealer Defendants)

61.     Plaintiffs incorporate by reference the statements and allegations of paragraph 1 through 60.

62.     As a result of their wrongful conduct, defendants have each violated their obligations of fair dealing, misrepresentation, fraud, notice, suitability, unauthorized trading, and knowing your customer as established by common law and further set forth in the National Association of Securities Dealers (NASD) Rules of Conduct 2110, 2120, 2310; NASD policy Statement IM-2310-2; and New York Securities Exchange (NYSE) Rules 401 and 405, as well as others.

63.     Securities brokers stand as fiduciaries to their customers and thus owe them a duty of reasonable care, good faith, loyalty and fidelity. A violation of these duties entitles a customer to relief.

64.     Defendants' actions described in paragraphs 28 and 30 specifically violate defendants' duty to make suitable investment recommendations, to follow plaintiffs' instructions regarding the trading in and activity regarding their accounts, to deal fairly with plaintiffs, and to advise plaintiffs of all trades in their accounts.

65.     Defendants' breached their fiduciary duty through the improper execution of trades, the facilitation of the fraud described in this Complaint, and the failure to inform plaintiffs of activities in their accounts.

66.     As a direct and proximate result of the defendants' breach of their fiduciary duty to plaintiffs, plaintiffs have suffered damages in an amount to be determined at trial.

67.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT V

### (Common Law Breach of Fiduciary Duty against Gruttadauria and the Broker-Dealer Defendants)

68.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 67.

69.     As their stockbroker and investment advisor, Gruttadauria owed fiduciary duties imposed by common law to plaintiffs, including duties of due care, candor and loyalty.

70.     Plaintiffs' reposed a special trust and confidence in Gruttadauria of which Gruttadauria was at all times aware and which Gruttadauria exploited to sustain and build upon his relationship with plaintiffs.

71.     Gruttadauria breached his fiduciary duties by, among other acts and omissions, those alleged in paragraph 28.

72.     Gruttadauria's breaches of fiduciary duty have caused and continue to cause plaintiffs to suffer injury and damage in an amount to be determined at trial.

73.     The broker-dealer defendants are liable for the wrongdoing of defendant Gruttadauria because, in addition to the acts and omissions alleged in paragraph 30, at all relevant times, with the broker-dealer defendants' full knowledge and approval:

    a.      The broker-dealer defendants and Gruttadauria held Gruttadauria out as a representative of the broker-dealer defendants and as the general manager of Lehman and S.G. Cowen;

    b.      Gruttadauria acted within the scope of his agency with the broker-dealer defendants; and

    c.      Gruttadauria acted with the actual and apparent authority of the broker-dealer defendants.

74.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT VI

### (Fraud against Gruttadauria and the Broker-Dealer Defendants)

75. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74.

76. Gruttadauria repeatedly made false and misleading representations of material fact either before or in connection with plaintiffs' investments, and omitted to state the material facts that were necessary in order for other representations to be truthful and honest.

77. Gruttadauria's numerous misrepresentations to plaintiffs include, but are not limited to:

a. Misrepresenting that he was employed in the broker-dealer's Chicago, Illinois offices where he had plaintiffs send their monies when they initially invested with the broker-dealer defendants, when Sarantakis would reinvest her investment proceeds with the broker-dealer defendants, and when Coyle invested additional sums as detailed in paragraph 19.

b. Misrepresenting to plaintiffs that the money invested with Gruttadauria would be used for investments in plaintiffs' names and for plaintiffs' benefit;

c. Verbally misrepresenting to plaintiffs the status of the investments contained in plaintiffs' accounts;

d. Mailing to plaintiffs bogus account statements on a periodic and usually monthly basis, which misrepresented the status of the investments contained in their accounts. On information and belief, this act was accomplished by Gruttadauria misdirecting the real Hambrecht, Cowen, S.G. Cowen and Lehman account statements to post office boxes maintained by shell corporations formed by Gruttadauria, and preparing false statements which, although they appeared

legitimate to plaintiffs, falsely reflected the status of plaintiffs' investments and inflated the account balances to mask Gruttadauria's misappropriation and depletion of plaintiffs' funds; and

e.      Preparing false statements allegedly totaling year-end account performance, including false IRS Form 1099 and other forms submitted to plaintiffs as well as their accountants and tax preparers, with the intent that plaintiffs pay taxes based on false IRS Forms 1099.

78.     Gruttadauria made these misrepresentations knowing them to be false at the time they were made and for the purpose of inducing plaintiffs to invest, and continue investing, with Gruttadauria. Gruttadauria's fraud occurred when plaintiffs initially invested money with him in Chicago, Illinois based on Gruttadauria's representation that he was located there, whenever Sarantakis reinvested proceeds with Gruttadauria by sending checks to the broker-dealers' Chicago, Illinois office, when Coyle invested additional sums in 1998 and 2001 as detailed in paragraph 19, and whenever plaintiffs received false account statements from Gruttadauria on a periodic, and usually monthly basis.

79.     Plaintiffs invested with Gruttadauria, and continued to invest with Gruttadauria, based on Gruttadauria's statements and recommendations regarding the performance of plaintiffs' investments and the value of those investments.

80.     As a result of Gruttadauria's misrepresentations and plaintiffs' reliance on those representations, plaintiffs have suffered injury and damages in an amount to be determined at trial.

81.     The broker-dealer defendants are liable for the wrongdoing of defendant Gruttadauria because, in addition to the acts and omissions alleged in paragraph 30, at all relevant times, with the broker-dealer defendants' full knowledge and approval:

a.     The broker-dealer defendants and Gruttadauria held Gruttadauria out as a representative of the broker-dealer defendants and as the general manager of Lehman and S.G. Cowen;

b.     Gruttadauria acted within the scope of his agency with the broker-dealer defendants; and

c.     Gruttadauria acted with the actual and apparent authority of the broker-dealer defendants.

82.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT VIII

### (Negligent Hiring/Supervision against the Broker-Dealer Defendants)

83.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 82.

84.     The broker-dealer defendants had a duty to ascertain Gruttadauria's fitness for the positions for which they hired Gruttadauria. The broker-dealer defendants also had a continuing duty to supervise Gruttadauria's activities to determine that Gruttadauria was complying with the broker-dealer defendants internal policies and procedures as well as the rules and regulations promulgated by various governmental entities such as the Securities and Exchange Commission (SEC) and organizations such as the New York Stock Exchange (NYSE) and the National

Association of Security Dealers (NASD). This duty is owed to all customers of the broker-dealer defendants, such as plaintiffs, to ensure that these customers' investments are not subject to fraud or manipulation.

85. As set forth in paragraph 30, the broker-dealer defendants' breached their duty to plaintiffs.

86. The broker-dealer defendant's negligence in hiring and supervising Gruttadauria's activities on a day to day basis resulted in at least the following:

a. Gruttadauria obtained money from plaintiffs under the false pretenses that the money would be invested in securities on plaintiffs behalf;

b. Gruttadauria forged and falsified documents in connection with plaintiffs' brokerage accounts;

c. Gruttadauria lied to plaintiffs about the performance of their investments;

d. Gruttadauria prepared false account statements and sent them to plaintiffs instead of the actual account statements;

e. Gruttadauria established shell companies whose purpose was to maintain false post-office boxes, and illegally directed plaintiffs' mail from the broker-dealers to those boxes;

f. Gruttadauria repeatedly misrepresented the status of trades and holdings by the plaintiffs;

g. Gruttadauria prepared false account statements allegedly totaling year-end account performance knowing that these statements would be relied upon by plaintiffs' accountants, tax advisors and various federal and state taxing agencies;

h.     Gruttadauria caused plaintiffs to pay capital gain taxes on fictional trades in their accounts;

i.     Gruttadauria issued improper checks and wire transfers to plaintiffs when they requested distribution from time to time from their accounts;

j.     Gruttadauria improperly transferred some or all of plaintiffs' funds out of plaintiffs' accounts with the defendant broker-dealers to other accounts that were under Gruttadauria's personal control; and

k.     Gruttadauria used computers, letterhead and facilities of the defendant broker-dealers in order to perpetuate his fraud.

87.     Others, for whom the broker-dealer defendants had a duty to properly hire and supervise, may have engaged in the same conduct as Gruttadauria as that alleged in paragraphs 28 and 86.

88.     The broker-dealers' negligence in hiring and supervising Gruttadauria caused plaintiffs' injury and damage in an amount to be proven at trial.

89.     Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT IX

**(Negligent Misrepresentations against Gruttadauria and the Broker-Dealer Defendants)**

90.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 89 above.

91.     Gruttadauria and the broker-dealer defendants had a duty to communicate accurate information to plaintiffs regarding their investments. Gruttadauria and the broker-dealer

defendants are in the business of supplying information for the guidance of others, including plaintiffs, in connection with the sale and purchase of investments.

92.   Gruttadauria and the broker-dealer defendants were negligent in making false statements of material fact including, but not limited to, the following:

a.   Plaintiffs' funds were invested solely for plaintiffs' benefit;

b.   Plaintiffs' account contained funds at the ever-increasing level represented by Gruttadauria; and

c.   The account statements that plaintiffs received accurately reflected the performance of the investments contained in plaintiffs' accounts;

93.   Gruttadauria and the broker-dealer defendants were careless or negligent in ascertaining the truth of the false statements set forth in paragraph 92.

94.   Gruttadauria and the broker-dealer defendants made the false statements set forth in paragraph 91 in order to induce plaintiffs to invest with him and continue to invest with him over the course of many years.

95.   Plaintiffs relied on the truth of Gruttadauria's and the broker-dealers' false statements in connection with these investments.

96.   As a direct and proximate result of Gruttadauria's and the broker-dealer defendants' negligent misrepresentations, plaintiffs have suffered damages in an amount to be determined at trial.

97.   The broker-dealer defendants are liable for the wrongdoings of defendant Gruttadauria because, in addition to the acts and omissions alleged in paragraph 30 and 90-96, at all relevant times, with the broker-dealer defendants full knowledge and approval:

a.  The broker-dealer defendants and Gruttadauria held Gruttadauria out as a representative of the broker-dealer defendants and as the general manager of Lehman and S.G. Cowen;

b.  Gruttadauria acted within the scope of his agency with the broker-dealer defendants;

c.  Gruttadauria acted with the actual and apparent authority of the broker-dealer defendants.

98.  Therefore, plaintiffs request compensatory damages including but not limited to damages for foregone investment opportunities against each defendant, jointly and severally in an amount to be proven at trial, an award of prejudgment and post-judgement interest, plaintiffs' reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT X

### (Violation of the Illinois Consumer Fraud and Deceptive Practices Act against Gruttadauria and the Broker-Dealer Defendants)

99.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 98.

100.  In the course of its business as stockbrokers, investment advisors and securities broker-dealers, and specifically with respect to its intentional inducement of plaintiffs to invest with Gruttadauria and the broker-dealer defendants and continue to invest with them, Gruttadauria and the broker-dealer defendants violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 501/1 et. seq. (the Act), by making the following false and deceptive representations:

a.  Representing that Gruttadauria was employed in the broker-dealers' Chicago, Illinois office where he had plaintiffs send their monies when they initially

24

invested with the broker-dealer defendants, when Sarantakis would reinvest her investment proceeds with the broker-dealer defendants, and when Coyle invested additional sums as detailed in paragraph 19.

b.      Representing that the money invested with Gruttadauria and the broker-dealer defendants would be used for investments in plaintiffs' names and for plaintiffs' benefit;

c.      Verbally representing to plaintiffs the status of the investments contained in plaintiffs' accounts, which were inaccurate and baseless.

d.      Mailing to plaintiffs bogus account statements on a periodic and usually monthly basis, which misrepresented the status of the investments contained in their accounts. Upon information and belief, this Act was accomplished by Gruttadauria misdirecting the real Hambrecht, Cowen, S.G. Cowen and Lehman account statements to post office boxes maintained by shell corporations formed by Gruttadauria, and preparing fake statements which, although they appeared legitimate to plaintiffs, falsely reflected the status of plaintiffs' investments and inflated the account balances to mask Gruttadauria's misappropriation and depletion of plaintiffs' funds;

e.      Preparing false statements allegedly totaling year-end account performance, including false IRS Form 1099 and other forms submitted to plaintiffs as well as their accountants and tax preparers, with the intent that plaintiffs pay taxes based on false IRS Form 1099.

101.    Gruttadauria and the broker-dealer defendants knew that the statements and acts alleged above were false and deceptive. The false and misleading statements and acts alleged

above were done with Gruttadauria and the broker-dealer defendants' intent to mislead and deceive plaintiffs and induce them to rely on Gruttadauria and the broker-dealer defendants' fraudulent statements and unfair and deceptive acts and omissions. Gruttadauria and the broker-dealer defendants failure to disclose true and accurate account statements to plaintiffs, who are consumers, occurred in the course of conduct involving trade and commerce by Gruttadauria and the broker-dealer defendants in Illinois.

102.    Plaintiffs' detrimentally relied on the false representations of Gruttadauria and the broker-dealer defendants by initially investing and continuing to invest monies with Gruttadauria and the broker-dealer defendants over the course of 15 years in Sarantakis' case, and 11 years in Coyle's case.

103.    As a result of defendant's violations of the Act, plaintiffs' have suffered damages.

104.    Therefore, Plaintiffs request  compensatory damages including but not limited to the amounts stated in the account statements defendants sent to plaintiffs, which, in November, 2001 reflected a joint account balance of over $896,000, treble damages, an award of pre-judgment and post judgment interest, plaintiffs' reasonable attorney fees and costs and all other relief as the Court deems just and proper.

## COUNT XI

### (Promissory Estoppel against Gruttadauria and the Broker-Dealer Defendants)

105:    Plaintiffs reallege and incorporate by reference paragraphs 1 through 104.

106.    Gruttadauria and the broker-dealer defendants' made repeated, clear and unambiguous written promises to plaintiffs regarding the value of plaintiffs' investment accounts with the broker-dealer defendants.  These statements were mailed to plaintiffs periodically, and

usually monthly, and reflected an account balance which, in November of 2001 represented a joint account balance of over $896,000.

107.    Plaintiffs reasonably and foreseeable relied on Gruttadauria and the broker-dealer defendants' promises concerning their investment accounts when deciding to and continuing to invest with Gruttadauria and the broker-dealer defendants over the course of almost 15 years in Sarantakis' case, and 11 years in Coyle's case.

108.    Gruttadauria and the broker-dealer defendants' promises regarding plaintiffs' investment accounts were false and misleading in that the broker-dealer defendants claim the account statements sent by the broker-dealer defendants' authorized  agent, Gruttadauria, were false and overstated plaintiffs' account balance.

109.    Plaintiffs were damaged as a direct and proximate result of their reasonable and foreseeable reliance on Gruttadauria and the broker-dealer defendants' false promises regarding plaintiffs' investment accounts in that they continued to invest with Gruttadauria and the broker-dealer defendants based on the information contained in the false account statements sent by Gruttadauria and the broker-dealer defendants.

110.    Therefore, plaintiffs request compensatory damages including but not limited to the amounts contained in the account statements sent by defendants which, in November of 2001, reflected a joint account balance of over $896,000, an award of prejudgment and post-judgment interest, plaintiffs' reasonable attorney fees and costs and all other relief as the Court deems just and proper.

**COUNT XII**

**(Punitive Damages against Gruttadauria and the Broker-Dealer Defendants)**

111.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 110.

112.   Gruttadauria and the broker-dealer defendants' violated plaintiffs' trust and confidence, acted fraudulently, willfully or with such gross negligence as to indicated wanton disregard of the rights of others by acts which include, but are not limited to, the following:

a.   Misrepresenting to plaintiffs that Gruttadauria worked in the broker-dealers' Chicago office and instructing plaintiffs to direct all investment monies to him there.

b.   Forging documents between plaintiffs and defendants.

c.   Misrepresenting to plaintiffs that the money invested with him would be used for investments in plaintiffs' names and for plaintiffs' benefit;

d.   Verbally misrepresenting to plaintiffs the status of the investments contained in plaintiff's accounts;

e.   Mailing to plaintiffs bogus account statements on a periodic and usually monthly basis, which misrepresented the status of the investments contained in their accounts;

f.   Preparing false statements alleging totaling year-end account performance, including false IRS Form 1099 and other forms submitted to plaintiffs as well as their accountants and tax preparors, with the intent that plaintiffs pay taxes based on false IRS Form 1900;

113.   The acts detailed in paragraph 112 were that of Gruttadauria's, or other managerial employees of the broker-dealers acting within the scope of their employment, the

28

broker-dealer defendants authorized these acts, the broker-dealer defendants were reckless in employing Gruttadauria or the other managerial personnel who committed the acts, or the broker-dealer defendants ratified or approved these acts. Therefore, the broker-dealer defendants are subject to plaintiffs' claim for punitive damages as well as Gruttadauria.

114. Many of the acts and omissions complained of in this Complaint have occurred previously resulting in fines and discipline being imposed against the broker-dealers by various self-regulating organizations such as the New York Security Exchange. Yet, this conduct continues. An award of punitive damages is appropriate to deter Gruttadauria and the broker-dealer defendants and others from conduct similar to that alleged in this Complaint.

115. Therefore, plaintiffs request an award of punitive damages in an amount sufficient to deter Gruttadauria and the broker-dealer defendants from engaging in conduct similar to that alleged in this Complaint.

### COUNT XIII

### (Professional Negligence – Accounting Malpractice against DeGrandis, Jr. and DeGrandis & DeGrandis)

116. Plaintiffs reallege and incorporate by reference paragraphs 1 through 110.

117. Having represented themselves as possessing the highest professional competence to prepare tax returns, DeGrandis, Jr. and DeGrandis & DeGrandis owed plaintiffs the common law duty to exercise due care, diligence and prudence in the discharge of their professional obligations.

118. DeGrandis, Jr. and DeGrandis & DeGrandis were negligent and failed to exercise their duties of due care, diligence and prudence in the discharge of their professional obligations including, without limitation, preparing plaintiffs' tax returns for the years 1991-2000.

119.    More specifically, DeGrandis, Jr. and DeGrandis & DeGrandis were negligent by committing acts and omissions which include, but are not limited to:

a.    Preparing plaintiffs' tax returns based on customer account statements which DeGrandis, Jr. and DeGrandis & DeGrandis knew, or should have known, were not legitimate account statements and did not accurately state the gains or losses plaintiffs incurred;

b.    Failing to ascertain the legitimacy of plaintiffs' account statements which DeGrandis, Jr. and DeGrandis & DeGrandis used to prepare plaintiffs' tax returns.

c.    Failing to inform plaintiffs that their account statements from the broker-dealers were not legitimate and, therefore, did not accurately state plaintiffs' true account balances.

d.    Failing to prepare accurate tax returns for plaintiffs based on the broker-dealer account statements properly addressed to DeGrandis, Jr. and DeGrandis & DeGrandis, resulting in plaintiffs' over paying income tax on phony investment gains which plaintiffs never actually realized.

120.    Had DeGrandis, Jr. and DeGrandis & DeGrandis properly discharged their duties of professional due care during the period of 1991-2000, they would have discovered the fraud being perpetrated by Gruttadauria and the broker-dealers, would have reported the proper gains and losses plaintiffs incurred as a result of their investments with Gruttadauria and the broker-dealer defendants, and would have accurately prepared plaintiffs tax returns for the years 1991-2000.

121.    Had plaintiffs' tax returns been properly prepared by the DeGrandis, Jr. and DeGrandis & DeGrandis, plaintiffs would not have continued investing with Gruttadauria and

the broker-dealer defendants, would not have had to amend their tax returns for the years 1998-2000 and would not have incurred excessive payments to the IRS as a result of prior tax returns which could not be amended.

122.    As a direct and proximate result of DeGrandis, Jr. and DeGrandis & DeGrandis' negligence, plaintiffs have suffered damages in an amount to be determined at trial.

123.    Therefore, plaintiffs request compensatory damages in an amount to be proven at trial, an award of prejudgment and post-judgment interest, plaintiffs' reasonable attorney fees and costs, and all other relief as the Court deems just and proper.

## COUNT XIV

### (Breach of Contract against
### DeGrandis, Jr. and DeGrandis & DeGrandis)

124.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 110 and 116 through 123.

125.    DeGrandis, Jr. and DeGrandis & DeGrandis agreed to provide accounting advice and tax preparation services to plaintiffs, including the preparation of tax returns for the years 1991-2000, which necessarily included the proper calculation of taxes owed and the legitimate basis on which those calculations would be made.

126.    Plaintiffs performed all conditions, covenants and promises which they were required to perform.

127    DeGrandis, Jr. and DeGrandis & DeGrandis breached their agreements with plaintiffs by failing to ascertain the legitimacy of the account statements on which DeGrandis, Jr. and DeGrandis & DeGrandis prepared plaintiffs' tax returns, and failing to accurately prepare tax returns for plaintiffs for the years 1991-2000.

128.    As a direct and foreseeable result of DeGrandis, Jr. and DeGrandis & DeGrandis' breach of their agreements with plaintiffs, plaintiffs have suffered damage in an amount to be determined at trial.

129.    Therefore, plaintiffs request compensatory damages in an amount to be determined at trial, an award of prejudgment and post-judgment interest, plaintiffs' reasonable attorney fees and costs, and all other relief as the Court deems just and proper.

PLAINTIFFS DEMAND AT TRIAL BY JURY ON EACH COUNT AS TO WHICH A TRIAL BY JURY IS ALLOWED UNDER LAW.

Dated:  May 2, 2002.

_____
Joseph L. Kish
On Behalf of Plaintiffs

Peter C. John
Joseph L. Kish
WILLIAMS MONTGOMERY & JOHN LTD.
20 N. Wacker Drive, Suite 2100
Chicago, IL  60606
(312) 443-3200
Doc ID - 573595

32