Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1609 | **DATE** | 03/14/2003 |
| **CASE TITLE** | Sarantakis v. Gruttadauria, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Hambricht & Quist's Motion to Stay Pending Arbitration (doc.#26-1);
Defendant Lehman Brother's Motions to Stay Pending Arbitration and Dismiss (doc. #28-1, 28-2);
Defendant DeGrandis & DeGrandis Motion to Dismiss or Transfer Venue (doc. #54-1, 54-2)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Enter memorandum opinion and order. Defendants Lehman Brothers' and Lehman Brothers Holdings' (collectively Lehman Brothers) motion to stay proceedings and compel arbitration (doc. #28-1) is GRANTED. Lehman Brothers' motion to dismiss (doc. #28-2) is denied without prejudice. The Court STAYS the case with regard to Lehman Brothers and hereby compels arbitration between the Plaintiffs and Lehman Brothers. Defendants Hambricht & Quist's and J.P. Morgan Securities' motion to stay proceedings and compel arbitration (doc. #26-1) is DENIED. Defendants DeGrandis & DeGrandis' and Joseph DeGrandis', Jr. Motion to dismiss (doc. #54-1) or in the alternative transfer venue (doc. #54-2) is DENIED.
(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 17 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 85 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 03 MAR 14 PM 5:27 | date mailed notice | |
| JHC | courtroom deputy's initials | FILED-DT | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 17 2003

GEORGIA G. SARANTAKIS and CAROL ANN COYLE, )
)
Plaintiffs, )
) No. 02 C 1609
v. )
) Judge William J. Hibbler
FRANK DOMINIC GRUTTADAURIA, LEHMAN )
BROTHERS, INC., LEHMAN BROTHERS HOLDINGS, )
INC., HAMBRECHT & QUIST, INC., J.P. MORGAN )
SECURITIES, INC., DEGRANDIS & DEGRANDIS, CPA, )
and JOSEPH DEGRANDIS, JR., )
)
Defendants. )

MEMORANDUM OPINION AND ORDER

Plaintiffs Georgia G. Sarantakis and Carol Ann Coyle bring this securities fraud action, alleging that their broker, Frank D. Gruttadauria, misappropriated their investments through an elaborate scheme involving phony investment accounts, forgery, the misdirection of mail, and repeated misrepresentations of the value of their investments. Gruttadauria pleaded guilty in the Northern District of Ohio on August 28, 2002, to securities fraud, bank fraud, wire fraud, and identity theft. His scam swindled more than $268 million dollars from investors and was sentenced to seven years in prison in November 2002. Gruttadauria has also been barred from associating with NYSE members or member firms. Not surprisingly, Gruttadauria faces multiple suits from his former clients, in districts as diverse as the Northern District of Ohio and the Southern District of California.

In addition to their claims against Gruttadauria, Plaintiffs also allege that Gruttadauria's employers—Hambrecht & Quist, Inc. (now known as J.P. Morgan Securities, Inc.) and Lehman Brothers, Inc. (collectively, "broker-dealer Defendants")—are responsible for Gruttadauria's

85

wrongdoing because they allowed him to perpetuate his scheme and failed to supervise and control his activities.[1] Plaintiffs further allege that their accountants, DeGrandis & DeGrandis (and, individually, Joseph DeGrandis, Jr.), were professionally negligent in failing to uncover Gruttadauria's misappropriation and as a result overreported their income taxes.

Before the Court are multiple motions filed by the broker-dealer Defendants to stay the proceedings pending arbitration or to dismiss. Further, Lehman Brothers, Inc., moves to dismiss parts of Plaintiffs' complaint because matters of fraud are not pleaded with sufficient particularity. Finally, the accountant Defendants have filed a motion to dismiss for lack of *in personam* jurisdiction and improper venue, or alternatively, to transfer venue.

## I. Factual Background

According to the Plaintiffs, each of the broker-dealer Defendants employed Gruttadauria during some portion of the time during which he managed their investments. The Plaintiffs' investment history is as follows. Sarantakis initially invested $226,000 with Gruttadauria in 1987, when he was employed by Hambrecht & Quist (which was acquired by J.P. Morgan Securities in 1999, whom Plaintiffs sue in its capacity as a successor in interest). Gruttadauria left Hambrecht & Quist in 1989 to work for Cowen & Co., and Sarantakis transferred her accounts at that time. While Gruttadauria was employed by Cowen & Co., Coyle (Sarantakis's daughter) invested approximately $70,000 with him over a ten year period, beginning in 1991. In 1998, Societe Generale acquired Cowen & Co. and opened S.G. Cowen, which then managed Plaintiffs' accounts.

---

[1] Plaintiffs also named Cowen & Co., Societe Generale, S.A., and S.G. Cowen Securities in their complaint. Plaintiffs have settled their claims against these Defendants and they have been dismissed from the pending action.

Two years later, Societe Generale sold S.G. Cowen to Lehman Brothers, making it the successor in interest to the Plaintiffs' accounts. At some point during their dealings with Gruttadauria, Sarantakis and Coyle combined their individual accounts, creating a single joint account. As of November 2001, according to the statement the Plaintiffs received from Lehman Brothers through Gruttadauria, the Plaintiffs' joint account had a balance of $896,500. But in January 2002, Plaintiffs learned that Gruttadauria had been falsifying the account statements he sent to them and that their actual account balance totaled only $5,118.70 because Gruttadauria had absconded with most of their investment. The Plaintiffs assert that the broker-dealer Defendants failed to supervise Gruttadauria and enabled him to perpetuate his fraudulent scheme for nearly fifteen years and thus are liable pursuant to § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and under the common law doctrine of *respondeat superior*.

When Sarantakis opened her account with Gruttadauria, she signed an account agreement with Hambrecht & Quist that contained an arbitration clause. Similarly, both Sarantakis and Coyle signed account agreements with Cowen & Co. that contained an arbitration clause. The arbitration clauses in the agreements do not contain the same wording, and the difference is material. The arbitration clause agreed to by Sarantakis with Hambrecht & Quist reads as follows:

> Any controversy, other than a controversy arising under the federal securities laws, between you and the undersigned arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration . . . .
>
> A controversy arising under the federal securities laws may be resolved through litigation in the courts or arbitration at your election.

The arbitration clause agreed to by Sarantakis and Coyle that governs their account with Lehman reads:

3

> Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement between us, or the construction, performance, or breach thereof, shall be settled by arbitration.... The provisions of this paragraph shall also apply to any such controversy involving any agent or employee of yours.

The broker-dealer Defendants argue that the arbitration clauses are so broad as to apply to Plaintiffs' claims that they failed to supervise and control the fraudulent actions of Gruttadauria, and thus argue that the Plaintiffs' claims must be submitted to arbitration. The Plaintiffs counter by suggesting that Gruttadauria's premeditated theft necessarily falls outside the scope of the parties' arbitration agreements.

## II. Analysis

The Federal Arbitration Act's (FAA) establishes a "federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983). One purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651 (1991). Federal statutory claims, such as those protected by the Securities Exchange Act of 1934, can be resolved through arbitration. *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332 (1987). Section 3 of the FAA directs district courts to stay the trial of the action pending arbitration upon the application of one of the parties "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. As worded, Section 3 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985).

Whether an issue is referable to arbitration is a question of contract interpretation, for "'a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit.'" *Matthews v. Rollings Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995) (quoting *Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 390 (7th Cir. 1984)). In interpreting arbitration clauses, the Supreme Court has instructed lower courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc.*, 470 U.S. at 221, 105 S.Ct. at 1242. The scope of the agreement therefore must be interpreted liberally and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Under this pro-arbitration rubric, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Matthews*, 72 F.3d at 53.

## A. Lehman Brothers

The arbitration clause contained in the agreements between Plaintiffs and Cowen & Co. (to which Lehman Brothers is the successor in interest) requires that "any controversy arising out of or relating to my *accounts* . . . shall be settled by arbitration." Based upon these agreements, Lehman Brothers moves to compel arbitration of the Plaintiffs' claims against it. Plaintiffs argue that Lehman Brothers' motion should be denied for two reasons. First, Plaintiffs argue that because they signed account agreements with Cowen & Co. but not with Lehman Brothers, Lehman Brothers has no right to compel them to arbitrate their claims. Second, Plaintiffs argue that the scope of the arbitration agreement is not so broad as to encompass the egregious acts committed by Gruttadauria. Plaintiffs' arguments are not convincing.

The Plaintiffs argue that Lehman Brothers cannot move to compel arbitration based on agreements between Plaintiffs and Cowen & Co. The arbitration agreements between Plaintiffs and Cowen & Co., however, all specifically provide that the "agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, executors, administrators, successors, and assigns." Plaintiffs nevertheless argue that Lehman Brothers produced no evidence that it is an assignee of or successor to Cowen & Co. But Lehman Brothers need not produce any such evidence because the Plaintiffs themselves allege in their complaint that S.G. Cowen is a "successor in interest" to Cowen & Co. and that Lehman Brothers is a "successor in interest" to S.G. Cowen, "having acquired the company in the fall of 2000." Lehman can assert Cowen & Co.'s right to compel arbitration because Lehman purchased certain assets of S.G. Cowen, including Plaintiffs' contracts with S.G. Cowen, and therefore is an successor in interest to whom Cowen & Co.'s rights under the agreement inure.

Plaintiffs next contend that the arbitration clause does not cover the fraud committed by Gruttadauria. Plaintiffs rely primarily on the decisions of other district courts, resolving similar motions in other cases brought by Gruttadauria's victims. *See Cohen v. PaineWebber, Inc.*, 2002 WL 63578 (Ohio App. 1 Dist. 2002) (denying motion to stay action pending arbitration); *Meyerhoff v. S.G. Cowen Sec., Inc.*, No. 02-C-1084 (S.D. Cal. 2002) (same); *see also FSP, Inc. v. Societe Generale*, 02 C 4786, 2003 WL 124515, *3 n.1 (S.D.N.Y. Jan 14, 2003) (observing that N.D. Ohio held that controversies in five pending actions against Gruttadauria's employers are not arbitrable). According to Plaintiffs, at the time the parties entered into the contract, there was no meeting of the minds "that the arbitration provision would cover claims alleging tortious forms of theft." (Plaintiffs opposition to S.G. Cowen's Motion to Stay) (quoting *Cohen*, 2002 WL 63578, *9). Plaintiffs'

6

attempt to avoid the reach of the arbitration clause by casting their complaint as one arising in tort—Gruttadauria's misappropriation of their funds. But the dispute Plaintiffs have with the broker-dealer Defendants is not whether the broker dealers themselves tortiously misappropriated Plaintiffs' investments. Rather, the gravamen of Plaintiffs' complaint is that the broker dealers did not adequately supervise Gruttadauria, allowing him to convert client funds over the course of nearly 15 years. The Seventh Circuit has repeatedly cautioned that plaintiffs cannot escape their contractual obligation to arbitrate by casting their claim as one arising in tort. *See Fyrnetics (Hong Kong), Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993); *see also Abinanti v. Leggett & Platt, Inc.*, 2001 WL 40806, No. 00-C-6029, *3-4 (N.D. Ill. 2001). The arbitration clause at issue covers "any controversy arising out of or relating to [Plaintiffs'] *accounts*." The Seventh Circuit has characterized similar provisions as "extremely broad and capable of an expans[ive] reach." *Fyrnetics (Hong Kong) Ltd*, 293 F.3d at 1030; *see also Welborn Clinic v. Medquist Inc.*, 301 F.3d 634, 639 (7th Cir. 2002); *Kiefer Specialty Flooring v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). With a broad, standard arbitration clause, "all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance," are subject to arbitration. *Welborn Clinic*, 301 F.3d at 639. Plaintiffs' claims that Lehman Brothers did not adequately supervise Gruttadauria relate to their accounts with the broker-dealer, and therefore are covered by the broad arbitration agreement.

Plaintiffs point out that both the NASD and the NYSE have a "six-year rule" limiting the submission of claims to arbitration, and fret that the broker-dealer Defendants may use the rule as a defense to defeat their claims. Plaintiffs' fears are unfounded. First, Lehman Brothers managed

7

Plaintiffs' accounts beginning in 2000, well within the six-year time frame allotted by the rule. Further, both the NASD and NYSE have an exception to the six-year rule, which provides that it does not apply to cases "directed to arbitration by a court of competent jurisdiction." NYSE Rule 603; *see also* NASD Rule 10304. The six-year rule serves as an eligibility requirement, not as a statute of limitations, and is therefore not a grounds to deny Plaintiffs the opportunity to recover on their claims. *See Geneva Sec. Inc. v. Johnson*, 138 F.3d 688, 691 (7th Cir. 1998); *see also Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992). Lehman Brothers' motion to compel arbitration and stay proceedings is GRANTED. Because this claim must be submitted to arbitration, all other issues raised by Lehman Brothers must be arbitrated.

## B. *Hambrecht & Quist & J.P. Morgan Securities*

Hambrecht and Quist and J.P. Morgan Securities (collectively, J.P. Morgan) also contend that the arbitration clause in their agreement with the Plaintiffs requires the Plaintiffs to bring their claims against them through arbitration rather than litigation. But the arbitration clause in the agreement between Plaintiffs and J.P. Morgan is not so broad as that governing Plaintiffs' accounts with Lehman Brothers. The J.P. Morgan arbitration clause does not require Plaintiffs to arbitrate any controversy related to their *accounts*, but instead requires Plaintiffs to arbitrate "[a]ny controversy . . . arising out of or relating to this *agreement* . . . ." The parties here did not employ language so broad as to make any dispute related to the Plaintiffs' accounts arbitrable. Instead, the parties restricted the class of claims that must be arbitrated to those that implicate the account agreement that contains the arbitration clause. Accordingly, the clause is necessarily more limited in scope than the clause contained in the agreement governing the Plaintiffs' accounts with Lehman Brothers.

8

Courts interpret arbitration agreements, like any other contract, according to their terms. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212 (1995). Thus, the Court must determine whether the Plaintiffs' claims that J.P. Morgan allowed Gruttadauria to perpetuate his scheme and failed to supervise and control his activities "arise out of" or are "related to" the *account agreement* that contains the arbitration clause. The Seventh Circuit has held that arbitration clauses with the terms "arising out of" or "relating to" should be broadly interpreted to cover all disputes having their genesis in the contract. *Sweet Dreams Unlimited, Inc.*, 1 F.3d at 642. Arbitration clauses couched in similar terms have been interpreted to govern all contract and tort claims that flow from the contractual relationship. *See, e.g., Fishman v. Meinen*, 2003 WL 444223, *8 (N.D. Ill. Feb. 24, 2003); *Joint Ukrainian-Spanish Venture INUS v. United Industries Int'l, Inc.*, 1994 WL 571662, *2 (N.D. Ill., Oct. 14, 1994); *High Strength Steel, Inc. v. Svenskt Stal Aktiebolog*, 1985 WL 2546, *2-3 (N.D. Ill., Sept. 16, 1985). Pure tort claims that can be asserted without reference to the contract, however, remain outside the provision's scope. *See Ford v. Nylcare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998). In other words, claims that do not implicate the contract are litigable. *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995). In deciding whether a particular claim implicates the agreement, and thus is subject to arbitration, courts focus on the factual allegations of the complaint. *Double Sunrise Inc. v. Morrison Management Specialists Inc.*, 149 F. Supp. 2d 1039, 1043 (N.D. Ill. 2001).

In this case, the Plaintiffs allege that the broker-dealer Defendants facilitated Gruttadauria's conversion of client funds by: 1) allowing Gruttadauria to supervise compliance officers, whose duty was to monitor the activities of stockbrokers; 2) allowing Gruttadauria to maintain a separate computer system; 3) failing to notice that Gruttadauria misdirected client account statements to post

9

office boxes that he controlled; 4) allowing Gruttadauria to make unauthorized account transfers; 5) failing to adhere to the internal policies, procedures, and rules regarding the handling of customer accounts; and 6) failing to ascertain the legitimacy of documents purportedly signed by the customers. A few of Plaintiffs' factual allegations relate tangentially to the account agreement. For example, the account agreement requires the broker-dealer to send communications to Sarantakis to the address supplied on the agreement. The agreement also specifies that "[r]eports of the execution of orders and statements of the account of the undersigned shall be conclusive if written objection has not been received . . . within ten days." On the other hand, neither Plaintiffs' claim that the broker-dealers allowed Gruttadauria to maintain a separate computer system, nor that they failed to supervise the compliance officers who were supposed to monitor his activity implicates the account agreement even tangentially. The gravamen of Plaintiffs' claim — that the broker-dealers failed to monitor the activities of Gruttadauria — has nothing to do with the account agreement. On the whole, the dispute between the Plaintiffs and J.P. Morgan does not have "genesis in the contract." *Sweet Dreams Unlimited*, 1F.3d at 642. The parties did not agree to arbitrate all disputes between the client and the broker. The parties easily could have drafted the arbitration clause to include any controversy related to the *account* itself if they wished it to have a more expansive grasp. Because the agreement to arbitrate is limited to complaints that relate to the account agreement and because Plaintiffs' claims can be asserted without reference to the account agreement, the Court finds that they fall outside the scope of the arbitration clause. J.P. Morgan's motion to compel arbitration is therefore DENIED.

J.P. Morgan moves in the alternative to stay proceedings pending the resolution of any matters that the Court finds arbitrable. When a court is faced with parallel proceedings, one judicial

and one arbitral, it may, in its discretion, stay the litigation among non-arbitrating parties. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n. 23; *IDS Life Ins. Co. v. Sunamerica, Inc.*, 103 F.3d 524, 529-30 (7th Cir. 1996). J.P. Morgan argues that the issues involved in the matters proceeding to arbitration are similar to the issues involved in the pending litigation, as both matters involve Gruttadauria's fraudulent scheme. While Gruttadauria's fraudulent scheme is at issue in the Plaintiffs' claims against both J.P. Morgan and Lehman Brothers, the actions of the broker-dealer Defendants themselves are more central to the Plaintiffs' claims against the individual broker-dealer Defendants. Moreover, it cannot be said that the Plaintiffs will not suffer any prejudice as the result of a stay in the proceedings. According the complaint, Sarantakis invested her life savings with Gruttadauria in 1987 and discovered in 2002 that it had been stolen by him. A stay in the proceedings serves only to delay any potential recovery that Sarantakis may achieve. Accordingly, the Court finds that it is not in the interests of fairness or judicial economy to stay the proceedings against J.P. Morgan pending the results of arbitration against Lehman Brothers. J.P. Morgan's motion for a stay is DENIED.

### C. *DeGrandis & DeGrandis*

The accountant Defendants move to dismiss Plaintiffs' complaint against them for lack of personal jurisdiction and improper venue. Fed. R. Civ. P. 12(b)(2)&(3). The Northern District of Illinois has jurisdiction over a non-resident defendant if the state courts of Illinois would have such jurisdiction. *Jamlik v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 820 (N.D. Ill. 1999). The Illinois long-arm statute allows courts to exercise jurisdiction to the fullest extent consistent with due process under the state and federal constitutions. 735 ILCS 5/2-209(c); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Illinois Long-Arm statute provides that any person,

whether a resident or non-resident of Illinois, will be subject to jurisdiction "as to any cause of action arising from . . . the transaction of any business within this state." 735 ILCS 5/2-209(a)(1). The Plaintiffs allege that the accountant Defendants prepared their tax returns over a ten-year period. The accountant Defendants' preparation of the Plaintiff tax returns falls within the scope of Illinois' long arm statute because they transacted business within the state— by 1) conferring with the Illinois Plaintiffs on the phone; 2) preparing Illinois tax returns; 3) establishing an Illinois trust on behalf of the Plaintiffs; and 4) meeting with the Plaintiffs in Illinois regarding the accounting services they provided.

Still, due process requires that a defendant must establish minimum contacts with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). Specific jurisdiction exists where the defendant has "purposefully directed" his activities at residents of the forum state and when the claim results from injuries that arise out of or relate to the contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985). Crucial to this analysis is showing that the defendant should "reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woods*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980). Here, the accountant Defendants purposefully engaged in an ongoing business relationship with the Plaintiffs by serving as their accountants for a ten-year period. By doing business in Illinois, the Defendants could reasonably anticipate being haled into court on any matter related to that business. *See Heritage House Rest. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir.1990) (relationship based on telephone and mail contacts may meet minimum contacts requirements). Plaintiffs' claims against the Defendants relate directly to their performance as the Plaintiffs'

accountants. The mere fact that the accountant Defendants performed the bulk of their services in Ohio rather than Illinois is insufficient to demonstrate that they are not subject to this Court's jurisdiction. The motion to dismiss for lack of jurisdiction is DENIED.

The accountant Defendants also move to dismiss the claims against them for improper venue. Fed. R. Civ. P. 12(b)(3). Venue under 28 U.S.C. § 1391(b) is proper when "a substantial part of the events or omissions giving rise to the claim occurred" in the Plaintiffs' chosen venue. Plaintiffs argue that a substantial part of Gruttadauria's fraudulent scheme occurred in Illinois because Gruttadauria held himself out as a resident of Lake Forest, Illinois, Plaintiffs sent their investment monies to the Chicago offices of the broker-dealer Defendants, and Gruttadauria sent them falsified account statements to their homes in Illinois. Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district. *See Egan v. Duell*, No. 88 C 4388, 1989 WL 36206, *3 (N.D. Ill. April 13, 1989); 15 U.S.C. § 78(aa). Thus with respect to Gruttadauria and the broker-dealer Defendants the Northern District of Illinois is an appropriate venue. But the Plaintiffs' claims against the accountant Defendants do not arise under the Securities Exchange Act, and venue must be proper for each of the Plaintiffs' *claims*. *See Egan*, 1989 WL 36206, at *3-4; 28 U.S.C. § 1391(b) (venue is proper only in a district where "a substantial part of the acts or omissions giving rise to the *claim*" occur). The Plaintiffs allege that the accountant Defendants failed to discover Gruttadauria's scheme, not that they participated in it. Plaintiffs' attempt to bootstrap the venue of the accountant Defendants upon the actions of Gruttadauria is therefore inappropriate. Plaintiffs also argue that the filing of their Illinois tax returns is a substantial part of the events or omissions giving rise to their complaint because it was the "necessary final act performed" by the Defendants in *Illinois*. But § 1391 requires that the events giving rise to the claim

13

occur within the *judicial district* in which the suit is brought. The suit is brought in the Northern District of Illinois, but tax returns are filed in Springfield, Illinois, which is in the Central District of Illinois. Thus, the mere act of filing tax returns cannot serve as a basis for venue in this case.

Nevertheless, the Northern District of Illinois is still a proper forum. Section 1391(b)(2) assumes that venue under the provision may be proper in more than one district. To establish venue, a plaintiff need only demonstrate that "a substantial part" of the events or omissions giving rise to the claim occurred within the forum district, not that a majority of the events took place there. *Pasulka v. Syke*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). To be "substantial" the events that occurred in the forum district must be "part of the historical predicate" of the claim. *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002). The essence of Plaintiffs' complaint is that the Defendants negligently performed their duties as the Plaintiffs' accountants, causing them to overreport their income and prepare inaccurate tax returns. Plaintiffs necessarily exchanged documents (such as completed tax returns or tax forms) with the Defendants. Plaintiffs also aver that they consulted with the Defendants regarding the preparation of their tax returns. Even when the defendant never personally enters the forum district, venue can nonetheless be appropriate in that district. *Id.* at 913. That is because the test for venue looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action. *Id.* at 914. Telephone conversations and correspondence can support venue under § 1391(b)(2) depending on the nature of the contacts and their relationship to the claim. *Id.* at 913-14; *Pasulka*, 131 F. Supp.2d at 994; *Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568, * 6 (N.D. Ill. Aug.11, 2000). In this case, the accountant Defendants' conversations and exchanges of information with the Illinois Plaintiffs, including the transmittal of the prepared tax returns, is directly related to

14

Plaintiffs' claim that the Defendants negligently prepared their tax returns. The conversations and exchanges of information thus form a "substantial part" of Plaintiffs' claims against the accountant Defendants. Therefore the Northern District of Illinois is an appropriate venue pursuant to § 1391(b)(2) and Defendants' motion to dismiss for improper venue is DENIED.

Lastly, the accountant Defendants urge the Court to transfer venue to the Northern District of Ohio. A district court may transfer any civil action to another district where it could have been brought for the convenience of the parties and witnesses and where the interests of justice so require. 28 U.S.C. § 1404(a). The Defendants argue that "virtually all of the party and non-party witnesses" reside in Ohio and that most of the discoverable documents are located in Ohio, where both Gruttadauria and the accountant Defendants maintained offices. But the location of the witnesses is not so one-sided as Defendants make it out to be. DeGrandis & DeGrandis, by its own admission, is a "three-person accounting firm." Defendants' Ohio witnesses therefore outnumber Plaintiffs' Illinois witnesses three to two, hardly supporting their contention that "virtually all of the party and non-party witnesses" reside in Ohio. The Defendants also argue that the broker-dealer Defendants' employees are in Ohio, but that is not necessarily the case. While Gruttadauria's offices were in Ohio, the accountant Defendants have not shown that the corporate offices of the broker-dealer Defendants (where a substantial number of witnesses likely are located) are in Ohio. The accountant Defendants also argue that judicial economy warrants transferring the litigation to the Northern District of Ohio, where a bevy of cases against Gruttadauria have been brought and are now consolidated. But DeGrandis neglects to mention that it is a party in but one of these cases. In short, Illinois is a more convenient forum for the Plaintiffs; Ohio is more convenient for the accountant Defendants. But Defendants fall short of proving that Ohio is substantially more

15

convenient. A plaintiff's choice in forum is owed a certain deference when it is the district where the plaintiff resides, and the defendant bears the burden of establishing that the alternative forum is more convenient. *See, e.g., Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir.2001). Defendants have not met that burden and their motion to transfer venue is DENIED.

IT IS SO ORDERED.

3-14-03
Date

Amy J. St. Eve
United States District Court